(42 P.3d 193)
No. 86,408

STATE OF KANSAS, *Appellee*, v. RICHARD T. POWELL, *Appellant*.

Opinion filed March 15, 2002.

*B. Kay Huff*, special appellate defender, of Lawrence, for appellant.

*Jerome A. Gorman*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, C.J., KNUDSON, J., and WAHL, S.J.

KNUDSON, J.: Richard T. Powell appeals his jury trial conviction for voluntary manslaughter, a lesser degree of the originally charged crime of first-degree murder. Powell poses a provocative challenge to his conviction, contending that because the evidence was not sufficient to support second-degree murder, he could not be convicted of voluntary manslaughter. Powell also contends the State committed prosecutorial misconduct in its closing argument.

We affirm. The evidence overwhelmingly demonstrates an intentional killing occurred without mitigating circumstances. Consequently, Powell may not complain that he was fortuitously convicted of a lesser degree of second-degree murder. We further

conclude any prosecutorial conduct that may have occurred did not deny Powell a fair trial.

On May 22, 1997, police recovered a dead body under a bridge in a residential area of Kansas City, Kansas. The body was wrapped in black plastic trash bags. A fingerprint analysis identified the body as Marion Wilson.

An autopsy revealed Wilson's death was caused by multiple stab wounds. Twenty-seven cuts, scrapes, and abrasions covered Wilson's body, including two fatal wounds to his chest and back. Several wounds to Wilson's hands indicated he put up a struggle. The pathologist estimated Wilson had been dead for 1 to 2 days. A drug screen showed phencyclidine (PCP), an illegal drug causing erratic behavior, in Wilson's system.

The police investigation of Wilson's death turned up no leads or suspects for the following 8 months. On February 7, 1998, police detectives arrived unannounced at the residence of Marquita Jones to speak to her on an unrelated matter. During the discussion with the detectives, Marquita volunteered information about a homicide where a dead body was recovered under the bridge in the same location where the police found Wilson.

Marquita told the detectives that Powell killed an unknown man in her home on May 20, 1997. Powell is the father of Marquita's daughter; he frequently spent the night at Marquita's home. Marquita witnessed Powell stab the man with a butcher knife and then wrap the dead body in black plastic trash bags. She learned the body was eventually found from hearing the news broadcasts.

Marquita lived with her mother, Renee, her brother, Donte, and her three children; they were all home at the time of the murder. The detectives interviewed Renee and sometime later Donte at the police station.

Marquita showed the detectives the remaining traces of blood in the house, which had not been cleaned. Investigators recovered samples of blood from a stairway in the laundry room. Forensic scientists performed DNA analysis on the samples. The blood found in the laundry room matched a sample of Wilson's blood; Powell was eliminated as a contributor.

The State charged Powell with one count of premeditated first-degree murder. Marquita, Renee, and Donte testified for the State and provided the details of the homicide. The defense presented no witnesses. The trial court instructed the jury to consider murder in the second degree and voluntary manslaughter as lesser included offenses.

We turn next to the specific issues raised in this appeal.

## Sufficiency of the Evidence

Resolution of this issue is controlled by our holding in *State v. Harris*, 27 Kan. App. 2d 41, 998 P.2d 524 (2000). In *Harris*, the defendant was charged with murder in the second degree but convicted of voluntary manslaughter. We concluded there was insufficient evidence of provocation to support the defendant's conviction of voluntary manslaughter. Nonetheless, noting the obvious windfall to the defendant, we held the defendant was not in a position to complain on appeal of insufficient evidence to support his conviction for voluntary manslaughter when the evidence was sufficient to convict him of the greater degree of the same crime.

Recognizing the impact of *Harris*, Powell argues the evidence was insufficient to convict him of second-degree murder because the State's witnesses lacked credibility. This argument is not persuasive. The function of determining witness credibility belongs to the jury and is not an issue for an appellate court to resolve. *State v. Cooper*, 252 Kan. 340, 347, 845 P.2d 631 (1993).

We agree with the holding in *Harris*. There was sufficient evidence to convict Powell of second-degree murder, and he may not complain on appeal that the jury inexplicably convicted him of a lesser degree of homicide.

## Ineffective Assistance of Counsel

This claim relates to the previous issue discussed. Powell argues his Sixth Amendment rights to a fair trial were violated by trial counsel requesting lesser included instructions before consulting with him or securing his approval. The record before us does not support Powell's version of the instruction conference. It was the

trial court, not Powell's attorney, who decided the evidence supported the giving of lesser included instructions.

It is the duty of the trial judge to decide what instructions are proper under the evidence presented, regardless of the requests or even the objections of the parties. See K.S.A. 2001 Supp. 21-3107(3); *State v. Weyer*, 210 Kan. 721, 727, 504 P.2d 178 (1972).

We fail to discern how trial counsel's performance could be considered deficient under the circumstances of this case. The trial court, over the State's objection, decided the lesser included instructions should be given. We conclude Powell's argument has no legal merit.

### *Prosecutorial Misconduct*

Powell's final issue is a claim of prosecutorial misconduct. Powell first claims the prosecutor insinuated the defendant used PCP on the night of the murder when there was no evidence to support such a representation. Second, Powell claims the State made improper comment regarding the culpability of its witness Donte Jones. The evidence at trial was that Jones helped Powell dispose of Wilson's body.

Our standard of review is settled. If a prosecutor's statements during closing argument rise to the level of violating a defendant's right to a fair trial and deny a defendant's Fourteenth Amendment right to due process, reversible error occurs despite the lack of a contemporaneous objection. *State v. Lumley*, 266 Kan. 939, 965, 976 P.2d 486 (1999). A two-step analysis is employed to determine if the questioned remarks require reversal. First, the appellate court determines whether the remarks fall outside the considerable latitude the prosecutor is allowed in discussing the evidence. Second, if the remarks are found improper, the court considers whether the remarks are so gross as to prejudice the jury against the defendant and deny him or her a fair trial. To support such a conclusion, the appellate court must be able to declare beyond a reasonable doubt that when viewed in light of the record as a whole, the error had little, if any, likelihood of changing the result of the trial. *State v. McCray*, 267 Kan. 339, 345, 979 P.2d 134 (1999).

We do not believe the prosecutor's comments regarding Powell's possible PCP use were supported by the evidence. Likewise, the prosecutor's remarks concerning Donte's culpability were not fair comment. However, we do not believe those comments caused prejudice and denied Powell a fair trial. Powell's defense was that he did not kill Wilson. The direct evidence that he did was very substantial. We conclude after review of the entire record that the misconduct had little, if any, likelihood of changing the result of the trial.

For all of the foregoing reasons, we affirm Powell's conviction.